MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Blvd. 6th Floor
Beverly Hills, CA 90212-2929
Telephone:   (310) 271-6223
Facsimile:    (310) 271-9805
michael.berger@bankruptcypower.com

Attorney for Debtor,
Choa Vision, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CHOA VISION, LLC, a California limited liability company,<br><br>    Debtor. | CASE NO.: 2:10-bk-44798-RN<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL; DECLARATIONS OF GENE CHOE AND MICHAEL E. MAHURIN IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH**<br><br>Date:  TBD<br>Time:  TBD<br>Place:  Courtroom 1645 |

TO THE HONORABLE RICHARD M. NEITER, JUDGE OF THE UNITED STATES BANKRUPTCY COURT AND THE OFFICE OF THE UNITED STATES TRUSTEE:

Choa Vision, LLC, a California limited liability company ("Debtor"), debtor and debtor-in-possession herein, hereby moves the Court, on an emergency basis, for an order granting the following relief:

A. Authorizing the Debtor to use any and all "cash collateral," as that term is defined in 11 U.S.C. § 363(a), now on hand or hereafter collected, in accordance with the budget ("Budget"), attached as Exhibit "1" to the Declaration of Gene Choe (the "Choe Declaration"), filed concurrently herewith. Debtor seeks to use such Cash Collateral for a period through September 30, 2010, or a date to be fixed by the Court for a "final" hearing on the use of Cash Collateral, at which final hearing the Debtor will ask the Court to extend its use of cash collateral for a period to and through February 28, 2011, or such other date as the Court may fix.

B. Authorizing the Debtor to make expenditures in amounts not to exceed 115% of the aggregate amounts contained in the Budget. Any expenditures in excess of that amount will require the written approval of secured creditor, or further order of the Court after appropriate notice. Budget savings may be carried over and used by the Debtor in subsequent periods.

C. Finding that the interests of the secured creditor in the Cash Collateral are adequately protected.

D. Granting to the secured creditor a replacement lien in the Debtor's post-petition cash and accounts receivable and the proceeds thereof, to the same extent, validity, and priority as any lien held by the secured creditor as of the petition date, to the extent cash collateral is actually used by the Debtor.

E. Allowing the debt service payments scheduled to be made to the secured creditor to be deposited into an interest-bearing escrow account until such time as the secured creditor establishes, to the satisfaction of the Court, that it is the holder of the note given by Debtor.

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

1 | F. Such further relief as the Court deems just and proper.

2 | This motion is made on the basis of the appended Choe Declaration, the Declaration of Michael E. Mahurin filed concurrently herewith, the within points and authorities, and on such other evidence as the Court elects to consider prior to or at the hearing on this matter.

Dated: September 15, 2010

LAW OFFICES OF MICHAEL JAY BERGER

By: *(signature)*
MICHAEL JAY BERGER
Attorney for Debtor,
Choa Vision, LLC

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF MOTION AND NEED FOR EMERGENCY RELIEF**

Debtor is the owner of the 350-room Crowne Plaza Hartford Downtown, located at 50 Morgan Street, in Hartford, Connecticut (the "Hotel"). The Debtor utilizes the Crown Plaza name under a franchise agreement with InterContinental Hotels Group ("IHG"). The day-to-day operations of the Hotel are managed by Packard Hospitality Group, LLC ("Packard"), a third-party management firm, pursuant to the terms of a management contract, by and between Debtor and Packard, dated as of June 25, 2008 (the "Management Contract"). Although Packard employs the 96 person staff that works at the Hotel, the Management Contract is governed by California law, under which the Debtor is considered a co-employer. Accordingly, Debtor must provide for payment of the prepetition wages, benefits and union obligations owed to this staff as of the August 18, 2010 petition date (the "Petition Date") as if they were employees of the estate.

This motion is filed on an emergency basis due to the nature of the Debtor's business. A hospitality facility, such as the Hotel, must provide customers with the highest quality of service during their stay. The failure to provide this level of service will result in severe reputational damage, and lower occupancy levels, revenues and asset values. The failure to provide the highest level of service could also lead to the Hotel's flag being pulled by IHG, which would have a severe adverse impact on the Hotel's revenues and asset values.

Substantially all of the assets of the Debtor are subject to a lien which secures a debt with an original principal balance of $13,143,000.00.

As more fully explained herein, the Debtor seeks the immediate use of all cash and cash equivalents on hand, and hereafter generated from the Hotel to the extent that the same constitutes "cash collateral" pursuant to 11 U.S.C. §363(a) ("Cash Collateral"). The cash

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

authorization in the Budget reflects what management believes is necessary to fund the ordinary course needs of the Debtor from the date of filing of the petition through February 28, 2011.

This Motion is filed on an emergency basis due to the nature of the Debtor's business. A Class A hospitality facility, such as the Hotel, must provide guests the highest quality of service during the term of their stay. The failure to provide guests the highest quality of service during the term of their stay. The failure to provide this level of service on a continuous basis will result in irreparable reputational damage, lowering occupancy levels, revenues and asset values. To provide this level of service, the Debtor requires the immediate use of all cash and cash equivalents on hand and hereafter generated, whether the same constitutes Cash Collateral, or not.

## II.    STATEMENT OF FACTS

A.    General Description of the Debtor

Debtor owns and operates, with the assistance of the management company, Packard, the Crowne Plaza Hartford Downtown hotel in Hartford, Connecticut. The Hotel features 350 guest rooms and suites, over 8,000 square feet of meeting space, one restaurant, a hotel bar, an outdoor pool and a fitness center. The Hotel currently employs approximately 96 people.

B.    Events Precipitating the Chapter 11 Bankruptcy Filing

On February 28, 2007, the Debtor gave CBB a promissory note (as amended, the "Note") and commercial mortgage (the "Mortgage"), in exchange for a loan (the "Loan") in the original principal amount of $13,143,000.00.

Debtor learned that CBB intended to sell the Note and assign the Deed of Trust to 50 Morgan CT, LLC ("50 Morgan"; collectively with CBB, the "Secured Creditor"). Debtor is

informed and believes that 50 Morgan has experience in the management of hotels and intends to attempt to oust the equity holders in the Debtor and take over the Hotel.

On or within days after the Petition Date, but, in any case, <u>after</u> the filing of the chapter 11 bankruptcy petition by the Debtor, the Debtor is informed and believes that CBB closed the sale of the Note to 50 Morgan. To date, the Debtor is informed that no assignment of the Mortgage has been recorded. Further, Debtor has received no confirmation, despite reasonable requests, from 50 Morgan that it is, in fact, the holder of the Note.

The Hotel is managed by Packard pursuant to the Management Contract. Packard employs approximately 96 employees to operate the Hotel and provide critical guest services.

C. <u>Adequate Protection Facts</u>

The Hotel is the Debtor's primary asset. The asset is well managed and is generating positive cash flow. Moreover, the Debtor's recent operating results and future projections indicate that this trend will continue and improve over the next year, providing ample adequate protection to the Secured Creditor's interests. Moreover, additional adequate protection will include the following provisions in the cash collateral order:

1. The Secured Creditor will receive a replacement lien against post-petition cash, accounts, receivables and inventory, and the proceeds of each of the foregoing, to the same extent and priority as any duly perfected and unavoidable liens in cash collateral held by such secured creditor as of the Petition Date, limited to the amount of any cash collateral of such secured creditor as of the Petition Date, to the extent that any cash collateral of such secured creditor is actually used by the Debtor. However, the lien will not reach new assets generated from "services," such as collections from restaurant operations, except to the extent of the value of

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

the food and beverage related inventory used in the generation of these services; and

2. The Debtor will provide to the Secured Creditor all interim statements and operating reports required to be submitted to the Office of the United States Trustee (the "<u>OUST</u>"), and monthly cash flow reports, broken down by the expense line items contained in the Budget, within 15 days after the end of each monthly period after the Petition Date.

The foregoing provisions, coupled with the value that will be preserved and generated through the continued operation of the Hotel, will proved the Secured Creditor all the protection required under Section 363.

### III. RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS

In section 363(c)(3), Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance with the needs of the debtor." 11 U.S.C. § 363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is necessary after a case is filed. <u>In re Center Wholesale, Inc.</u>, 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' …It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.'"); <u>In re Sullivan Ford Sales</u>, 2 B.R. 350, 355 (Bankr.D.Me. 1980).

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

As the Choe Declaration establishes, the hotel business is very competitive and one of the most important variables that guests weigh when choosing a hotel is the level and quality of service. Unless the Debtor obtains immediate authorization to use Cash Collateral to pay all ordinary and necessary obligations, the operations of the Hotel will be adversely impacted. If use of cash collateral is not granted immediately, operations will be interrupted and occupancy levels will most certainly decline, reducing the value of the estate's assets and impairing the rights of creditors. In contrast, if immediate relief is granted as prayed herein, asset values will be preserved. Under these circumstances, granting relief on an emergency basis is both necessary and appropriate.

## IV. THE USE OF THE CASH COLLATERAL FOR OPERATIONS SHOULD BE AUTHORIZED IN ACCORDANCE WITH THE BUDGET

The Debtors should be authorized to use the Cash Collateral to operate the Hotel because the continued operations and the concomitant use of the Cash Collateral will preserve the value of the Cash Collateral and of the Hotel for the benefit of the estate and the Secured Creditors.

"Cash Collateral" is defined in 11 U.S.C. § 363(b)(1) as cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest, and includes the proceeds, products, offsprings or profits of property subject to a security interest as provided in 11 U.S.C. §552(b), whether existing before or after the commencement of the case.

Under 11 U.S.C. §363(c)(2), a Debtor may use Cash Collateral where: (1) each entity that has an interest in such Cash Collateral consents, or (2) the court authorizes such use after notice and hearing. See Freightliner Market Development v. Silver Wheel Freight, 823 F.2d 362, 367-

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

68 (9th Cir. 1987). Under 11 U.S.C. §363(e), the court may condition the use of property, including Cash Collateral, as necessary to provide adequate protection of an entity's interest in such Cash Collateral. Adequate protection is related to the risk of "decrease in the value of [the secured creditor's] interest in such property." See 11 U.S.C. §361.

The general inquiry regarding the use of Cash Collateral by a Debtor is whether the secured creditor's interest in the Cash Collateral is adequately protected against a decrease in the value of such collateral. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984). Adequate protection, by its nature, must be determined on a case-by-case basis. In re Belco, Inc., 38 B.R. 525, 527 (Bankr. W.D.Okla. 1984). The issues to be determined are the value of the Cash Collateral and whether the proposed use of the Cash Collateral threatens that value. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d at 1019. The value of the interest to be protected is the lesser of the amount of the claim or the net value of the collateral after the costs of collection have been considered. Id. at 1020; see also United Saving Association of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365 (1988).

If the collateral in which the creditor has a security interest is worth less than the amount owed to the creditor, the debtor in possession or Debtor must only provide adequate compensation to the extent that the value of the collateral is decreasing. Id. at 369; In re McCombs Properties VI, Ltd., 88 B.R. 261, 266 (Bankr. C.D.Cal. 1988) (recognizing in this post-Timbers case that adequate protection must be provided if the value of the collateral is likely to diminish during the time the Cash Collateral is used).

It is axiomatic that the use of Cash Collateral to pay for the ordinary and customary expenses of a rental property provides adequate protection for the interest of the secured creditor

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

in such Cash Collateral. See e.g. In re Donato, 170 B.R. 247, 256 (Bankr. D. N. J. 1994); In re Morning Star Ranch Resorts, 64 B.R. 818, 822-23 (Bankr. D. Colo. 1986).

The Budget establishes that the Debtor is generating positive earnings before interest, taxes, depreciation and amortization; consequently the cash collateral pool will not be depleted through continuing operations.

## V. UNTIL THE HOLDER OF THE NOTE CAN BE IDENTIFIED, ALL DEBT SERVICE PAYMENTS SHOULD BE HELD IN ESCROW

Debtor has attempted to confirm with the Secured Creditor who is actually holding the Note to the Hotel. Debtor made a reasonable request to counsel of 50 Morgan asking that they confirm that 50 Morgan was, in fact, now holding the Note originally given by the Debtor to CBB. As set forth above, and in the supporting declarations of Michael E. Mahurin and Gene Choe, 50 Morgan has neither confirmed that they are holding the Note nor have they provided any evidence of recordation of the assignment of the Mortgage.

Based upon the Debtor's current inability to identify which party is actually holding the Note to the Property, the Debtor believes that the establishment of an escrow account for deposit of the debt services payments is the appropriate course of action until one of the Secured Creditors decides to confirm which actually holds the Note.

## VI. A PART OF THE REVENUES GENERATED FROM THE HOTEL DO NOT CONSTITUTE CASH COLLATERAL

The Debtor's revenues are generated from two primary sources: room charges and services. This dichotomy has legal significance in the cash collateral context: Post-petition revenues generated from occupancy charges, to the extent that they were subject to the Lender's prepetition lien, constitute cash collateral. 11 U.S.C. §§ 363(a); 552(a). However, revenues

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

generated from *services* are generally not cash collateral. Accordingly, the Debtor has the right to use these funds without restriction in the ordinary course of business. *See In re Skagit Pacific Corporation*, 316 B.R. 330, 336 (9th Cir. BAP 2004) ("Thus, any portion of the DOT Account Receivable attributable to the Debtor's services as part of the manufacturing or production of the modules would not be considered proceeds under § 552(b). And what is produced by the debtor's added value by its labor (or the value added by others' labor) throughout the process of the reorganization effort will likewise not be subject to a creditor's pre-petition interest."); *In re Cafeteria Operators, L.P.*, 299 B.R. 400 (Bankr. N.D. Tex. 2003).

In the *Cafeteria Operators'* case, which was cited with approval by the Ninth Circuit Appellate Panel in the *Skagit* case, the court explained how this dichotomy applied to the post-petition revenues generated by a restaurant:

> Restaurant revenues are primarily the fruit of Debtors' labor; however, they do contain some component of proceeds of inventory. Thus, the cash generated from the sale of the inventory is Bank Group's cash collateral. In the alternative, pursuant to § 552(b), the equities of the case warrant limiting the Bank Group's interest in Debtors' post-petition cash to the value of the Debtors' inventory subject to Bank Group's lien that is converted to cash upon its sale.
>
> Debtor is authorized to utilize Bank Group's cash collateral. As adequate protection, Bank Group is granted replacement liens on inventory acquired post-petition and, on a going forward basis, in any other assets of Debtor, as needed to restore and maintain the Bank Group's secured position in inventory as of the Petition Date.

299 B.R. at 409.

In essence, the *Cafeteria Operator's* case provides that the revenues generated from the operation of a restaurant facility are only cash collateral to the extent of the cost of the food used in the service, which in that case constituted just one third of the total cost involved in the operation of the facility. The remainder of the revenues was attributable to services and

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

1. consequently was not cash collateral. The Debtor is raising this issue at the outset to ensure that
2. the Secured Creditors' liens do not reach collections attributable to the restaurant, bar, spa,
3. banquet, and other services provided by the Debtor post-petition, except to the extent of the
4. inventory used in such processes, since this source of unencumbered collateral will be of
5. particular importance to the unsecured creditors.

For the foregoing reasons, the Debtor would respectively request that the Court grant the relief prayed for herein.

Dated: September 15, 2010

LAW OFFICES OF MICHAEL JAY BERGER

By: /s/ Michael J. Berger
MICHAEL JAY BERGER
Attorney for Debtor,
Choa Vision, LLC

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

In re: CHOA VISION, LLC

Debtor(s)

CHAPTER: 11

CASE NUMBER: 2:10-bk-44798-RN

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

9454 Wilshire Blvd., 6th Floor, Beverly Hills, California 90212.

A true and correct copy of the foregoing document described "**DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL; DECLARATIONS OF GENE CHOE AND MICHAEL E. MAHURIN IN SUPPORT THEREOF FILED CONCURRENTLY HEREWITH**" will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _September 17, 2010_ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _September 17, 2010_ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _September 17, 2010_ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 09/17/10 | Cristina Frankian | /s/ Cristina Frankian |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

<u>Service List</u>

*Section I – Served Via Electronic Notice*

Office of the US Trustee
725 S. Figueroa Street, Suite 2600
Los Angeles, California 90017
ustpregion16.la.ecf@usdoj.gov
russell.clementson@usdoj.gov

Philip A Gasteier
pag@lnbrb.com

Leib M Lerner
leib.lerner@alston.com

*Section II – Served Via Overnight Mail*

Hess Corporation
Attention: Legal
One Hess Plaza
Woodbridge, New Jersey 07095

U.S. Foodservice Inc.
9399 W. Higgins Rd., Suite 600
Rosemont, Illinois 60018

InterContinental Hotels Group
Attention: Legal Department
Three Ravinia Drive, Suite 100
Atlanta, GA 30346

*Section III – Served Via Personal Delivery, Email, or Facsimile*

Chambers of Judge Richard Neiter
United States Bankruptcy Court – Central District of CA
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1652
Los Angeles, California 90012
*Served Via Personal Delivery*

50 MORGAN CT, LLC.
3435 Wilshire Blvd., Suite 430
Los Angeles, CA 90010
*Facsimile: (213) 487-9776*

City of Hartford
550 Main Street
Hartford, CT 06103
*Facsimile: (860) 808-5383*

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

| | |
|---|---|
| 1 | Commonwealth Business Bank |
|   | 5055 Wilshire Boulevard, #100 |
| 2 | Los Angeles, CA 90036 |
|   | *Email: davidk@cwbbank.com* |
| 3 | |
| 4 | Greater Hartford C & V Bureau |
|   | 31 Pratt Street, 4th Floor |
| 5 | Hartford, CT 06103 |
|   | *Email: mvp@hartfordcvb.org* |
| 6 | |
|   | Metropolitan District |
| 7 | 555 Main Street |
|   | PO Box 800 |
| 8 | Hartford, CT 06142 |
|   | *Email: jjohnson@mdc.com* |
| 9 | |
|   | One Communications |
| 10 | PO Box 415721 |
|   | Boston, MA 02241-5721 |
| 11 | *Email: mshaw@onecommunications.com* |
| 12 | Packard Hospitality Group |
|   | 8775 Aero Drive |
| 13 | Suite 335 |
|   | San Diego, CA 92123 |
| 14 | *Email: steve@packard-1.com* |
| 15 | Plymouth Park Tax Services, LLC |
|   | dba XSPAND |
| 16 | 115 S. Jefferson Rd., D-4 |
|   | Whippany, NJ 07981 |
| 17 | *Email: diane.ilacqua@jpmorgan.com* |
| 18 | Solomon Agency Corp. |
|   | 29-50 Union St. 2nd floor |
| 19 | Suite 200 |
|   | Flushing, NY 11354 |
| 20 | *Facsimile: (718) 461-8185* |
| 21 | State of Connecticut |
|   | Department of Revenue Services |
| 22 | 25 Sigourney Street |
|   | Hartford, CT 06106 |
| 23 | *Facsimile: (860) 297-5916* |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING INTERIM USE CASH COLLATERAL

EXHIBIT 1

## CROWNE PLAZA HARTFORD
### Cash Forecast

| | August 18 to 31 | SEPTEMBER | OCTOBER | NOVEMBER | DECEMBER | JANUARY | FEBRUARY |
|---|---|---|---|---|---|---|---|
| Projected Revenues | 288,690 | 577,380 | 794,727 | 514,713 | 467,043 | 396,962 | 401,659 |
| Less Projected A/R billed | -54,000 | -135,000 | -135,000 | -135,000 | -135,000 | -135,000 | -145,000 |
| | 234,690 | 442,380 | 659,727 | 379,713 | 332,043 | 261,962 | 256,659 |
| Beginning Cash | $ 238,108.60 | | | | | | |
| **Cash Forecast:** | | | | | | | |
| Projected Cash/Credit Cards | $ 234,690 | $ 442,380 | $ 659,727 | $ 379,713 | $ 332,043 | $ 261,962 | $ 256,659 |
| Projected Accounts Receivable | $ 64,829 | $ 162,073 | $ 135,000 | $ 135,000 | $ 135,000 | $ 135,000 | $ 135,000 |
| Total Cash Funds Projected | $ 299,519 | $ 604,453 | $ 794,727 | $ 514,713 | $ 467,043 | $ 396,962 | $ 391,659 |
| **Operating Expense** | | | | | | | |
| Payroll Expense to include all taxes | $ 118,000 | $ 236,000 | $ 245,000 | $ 230,000 | $ 225,000 | $ 220,000 | $ 220,000 |
| State of CT Occupancy/Sales Tax Payments | $ - | $ 68,000 | $ 50,000 | $ 68,000 | $ 50,000 | $ 50,000 | $ 50,000 |
| Food & Liquor (Critical) | $ 10,000 | $ 20,000 | $ 36,000 | $ 42,000 | $ 34,000 | $ 21,000 | $ 21,000 |
| Utilities | $ 22,500 | $ 45,000 | $ 45,000 | $ 45,000 | $ 48,000 | $ 55,000 | $ 58,000 |
| Franchise Fees | $ - | $ 55,000 | $ 45,000 | $ 60,000 | $ 40,000 | $ 38,000 | $ 35,000 |
| Operating Expense--Other | $ 12,500 | $ 25,000 | $ 75,000 | $ 85,000 | $ 75,000 | $ 70,000 | $ 75,000 |
| Debt Service | $ 85,000 | $ 85,000 | $ 85,000 | $ 85,000 | $ 85,000 | $ 85,000 | $ 85,000 |
| Property Insurance--Fire/Liability | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 | $ 6,000 |
| Total Expenses to be paid | $ 254,000 | $ 540,000 | $ 587,000 | $ 621,000 | $ 563,000 | $ 545,000 | $ 550,000 |
| Cash Generated for the Month | $ 45,519 | $ 64,453 | $ 207,727 | $ (106,287) | $ (95,957) | $ (148,038) | $ (158,341) |
| | | | | | | | |
| CheckBook Cash Balance | $ 283,628 | $ 348,081 | $ 555,808 | $ 449,521 | $ 353,564 | $ 205,526 | $ 47,185 |