1

**MICHAEL JAY BERGER (State Bar # 100291)**
**LAW OFFICES OF MICHAEL JAY BERGER**
**9454 Wilshire Blvd. 6th Floor**
**Beverly Hills, CA 90212-2929**
**Telephone:    (310) 271-6223**
**Facsimile:    (310) 271-9805**
**michael.berger@bankruptcypower.com**

2

3

4

5

6

**Attorney for Debtor,**
**CHOA Vision, LLC**

7

8

9

10

11

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| **In re** ) | **CASE NO.:  2:10-bk-44798-RN** |
| ) | |
| **CHOA Vision, LLC,** ) | **Chapter 11** |
| ) | |
| **Debtor.** ) | **OPPOSITION TO THE MOTION FOR** |
| ) | **RELIEF FROM THE AUTOMATIC STAY** |
| ) | **UNDER 11 U.S.C. § 362 OF HOLIDAY** |
| ) | **HOSPITALITY FRANCHISING, INC.;** |
| ) | **DECLARATION OF GENE W. CHOE** |
| ) | **AND BEN ZABALA IN SUPPORT** |
| ) | **THEREOF** |
| ) | |
| ) | Date: March 8, 2011 |
| ) | Time: 9:00 a.m. |
| ) | Courtroom 1645 |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| _____ ) | |

12

13

14

15

16

17

18

19

20

21

22

        **TO THE HONORABLE RICHARD M. NEITER, JUDGE OF THE UNITED**

23

**STATES BANKRUPTCY COURT, TO THE UNITED STATES TRUSTEE AND TO ALL**

24

**INTERESTED PARTIES:**

25

26

        Choa Vision, LLC, debtor and debtor-in-possession herein (the "Debtor"), brings this

27

Opposition to the Motion for Relief from Automatic Stay Under 11 U.S.C. § 362 (the "Motion")

28

of Holiday Hospitality Franchising, Inc. ("HHFI"), as follows:

1

# I.    <u>INTRODUCTION</u>

Choa Vision, LLC, a California limited liability company, debtor and debtor-in-possession herein (the "<u>Debtor</u>"), owns and operates the Crowne Plaza Hartford Downtown, located at 50 Morgan Street, Hartford, Connecticut (the "<u>Hotel</u>").  The Debtor utilizes the Crown Plaza name subject to a certain Crowne Plaza Change of Ownership License Agreement (the "<u>Franchise Agreement</u>"), dated February 28, 2007.  [See the Declaration of Gene W. Choe in Support of the Debtor's Opposition to the Motion (the "<u>Choe Declaration</u>"), ¶2, attached herein.]

On August 18, 2010, Debtor filed for a voluntary Chapter 11 Bankruptcy ("<u>Petition Date</u>").  Since the Petition Date, the Debtor has continued in the possession of its Hotel and the management of its affairs.  [Choe Declaration, ¶3]

The Hotel is the only real property asset of the Debtor's estate.  The Hotel's scheduled value is $12,340,000.00.  The Hotel features 350 guest rooms and suites, over 8,000 square feet of meeting space, one restaurant, a hotel bar, an outdoor pool and a fitness center.  [Choe Declaration, ¶4]

Effective November 1, 2010, the Debtor terminated the management contract with Packard Hospitality Group, LLC, and the Debtor transitioned its records and management to a new third-party management company, Marshall Hotels and Resorts ("<u>Marshall</u>").  [Choe Declaration, ¶5]

The day-to-day operations of the Hotel are now managed by Marshall, pursuant to the terms of a management contract, by and between Debtor and Marshall, dated as of November 1, 2010.  On or about December of 2010, Marshall was completely integrated into the daily management of the Hotel.  On January 4, 2010, Ben Zabala, a Certified Hotel Administrator, took over as the general manager of the Hotel.  [Choe Declaration, ¶6]

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY FRANCHISING, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Since taking over the daily management of the Hotel, Marshall has planned and implemented numerous changes at the Hotel. [See the Declaration of Ben Zabala in Support of the Debtor's Opposition to the Motion (the "Zabala Declaration"), ¶¶3-11, attached herein.]  The Debtor has been advised that the effect of the changed management will only be seen in the upcoming months.  However, in a mere 7 weeks since the new general manager came on board, the quality scores have dramatically gone up. [Zabala Declaration, ¶¶12-13]

It is premature to grant relief from the automatic stay at this stage of the bankruptcy case. Debtor is currently drafting its Disclosure Statement and Plan of Reorganization (the "Plan"), which is due on March 15, 2011.  A court should not precipitously sound the death knell for a debtor by prematurely determining that the debtor's prospects for economic revival are poor.  *In re Shockley Forest Industries, Inc.*, 5 B.R. 160, 162 (Bankr. N.D. Ga. 1980).

Debtor's forthcoming Plan and offers of adequate protection in the form of rising quality scores are sufficient reasons to deny HHFI's Motion at this time.

## II.    ARGUMENT

### A.    "Cause" Does Not Exist to Justify Granting Relief from Stay

HHFI seeks relief from automatic stay on the grounds that sufficient cause exists pursuant to section 362(d)(1) to grant such relief, because HHFI's interest in its property (the use of the Crown Plaza® Service Mark), is not adequately protected.

Section 362(d)(1) of the Bankruptcy Code provides that relief from the automatic stay can be granted upon a showing of "cause." 11 U.S.C. § 362(d)(1).  Use of the word "cause" suggests an intention that the bases for relief from the stay should be broader than merely lack of adequate protection.  "Because there is no clear definition of what constitutes 'cause', discretionary relief from the stay must be determined on a case by case basis." *In re MacDonald*,

755 F.2d 1162, 1166 (9th Cir. 1990) ("Cause has no clear definition and is determined on a case-by-case basis . . ."); *In re Castlerock*, 781 F.2d 159, 163 (9th Cir. 1986) ("[C]ause is determined on a case-by-case basis.").

The stay may not be lifted if defaults have been or can be cured and the franchisor is adequately protected.  In this case, cause does not exist to justify granting HHFI's Motion to terminate the franchise agreement.  In its Motion, HHFI states that "[s]ince the Petition Date, the quality scores have sunk dramatically, and there appears to be no hope for the Debtor to raise its scores to an acceptable level."

To support its argument, HHFI offers the Hotel's 12-month rolling Overall Satisfaction ("OSAT") scores to determine the grounds for issuance of a default and termination notice under the Franchise Agreement.  However, this method of measurement portrays an inaccurate picture of the Hotel's performance.  To look at antiquated data that spans from 12 months before the Petition Date only brings to light the facts that precipitated the filing of the bankruptcy and Debtor's need to reorganize under a Chapter 11 plan.  What may actually be helpful is looking at the monthly OSAT scores to look at a possible upward trend.  Moreover, in this particular case where the Debtor brought in new management only a few months ago, it would be most helpful to look at the weekly OSAT scores to determine whether there is improvement and hope for the Debtor to raise the Hotel's quality scores going forward.

A true and correct copy of the weekly summaries since November 1, 2010, reporting the results of the customer surveys regarding the Hotel is attached as **Exhibit 1** to the Zabala Declaration.  As can be seen from the summaries, the Hotel's scores start very low, but there is a gradual but certain upward trend in the scores.  Moreover, although the official monthly summary will not be available for another couple weeks, the current quality score for February is

4

83.97, comfortably passing the required OSAT score of at least 82.00 to avoid a failing grade.

These improving scores are a direct result of the numerous changes planned and implemented at

the Hotel by Marshall, as described in detail in the Zabala Declaration.  The complete effect of

the changed management will only be seen in the upcoming months.  [Zabala Declaration, ¶13]

With these ongoing changes, improvement in the Hotel's quality scores and maintaining those

scores are realistic expectations.

HHFI relies on *In re Tudor Motor Lodge Associates, L.P.*, 102 B.R. 936 (Bankr. D.N.J.

1989), in which the court granted a hotel franchisor's motion to lift the stay.  It is true that the

property in this case (the use of trademarks and service marks) is such a type that money alone

cannot adequately protect the franchisor, and to offer adequate protection, the franchisee must

comply with the franchisor's quality assurance system to protect the franchisor's reputation and

name.

However, *Tudor* is factually distinguishable.  In that case, the court found that the

franchisee-debtor's offer of adequate protection was insufficient because the franchisee-debtor

merely offered payment of post-petition obligations under the franchise agreement, with payment

on pre-petition liabilities upon the successful completion of the franchisee-debtor's

reorganization plan.  In this case, the Debtor is not asking the court to deny HHFI's Motion out

of the vacuum – it is able to provide evidence of its ability to cure its default in the near future.

For these reasons, "cause" does not exist, and HHFI's Motion should be denied.

**B.**     **Court Should Grant the Debtor Time to Cure**

In evaluating the likelihood that the Debtor's efforts will be successful, the court must be

mindful of the purpose of Chapter 11 of the Bankruptcy Code.  Chapter 11 is designed for the

5

1  purpose of preventing the unnecessary dissolution of an otherwise viable corporation. *In re*

2  *Aurora Cord and Cable Company*, 2 Bankr. 342, 1 CBC 2d 486 (N.D. Ill. 1980).

3       For the Court to fairly evaluate the Hotel and its ability to meet and maintain HHFI's

4

5  standards, the Court must consider the turn-around that is occurring with the new management.

6  As the circumstance in this case illustrates, the Debtor's Hotel, under the new management of

7  Marshall, quickly rising well above the HHFI quality score level necessary to represent a cure of

8  the defaults under the Franchise Agreement.  Given the Debtor's forthcoming Plan and offers of

9

10 adequate protection in the form of rising quality scores, the Court should deny HHFI's Motion at

11 this time and give the Debtor additional time to cure its default.

12

13                    III.    **CONCLUSION**

14       Based upon the foregoing, the Debtor respectfully requests that the Court deny HHFI's

15

16 Motion for Relief from the Automatic Stay, or alternatively provide a continued hearing date to

17 consider the Debtor's improvement in the Hotel's quality scores, and grant such other and further

18 relief as the Court deems just and proper under the circumstances of this case.

19

20 Dated: February 22, 2011        By:

21                                       Michael Jay Berger
                                         Attorneys for Debtor,
22                                       Choa Vision, LLC

23

24

25

26

27

28

                              6

### DECLARATION OF GENE W. CHOE

I, Gene W. Choe, declare and state as follows:

1.      I am a Member of CHOA Vision, LLC, the debtor and debtor-in-possession herein (the "Debtor").  I have been responsible for overseeing the day-to-day operating and financial performance of the Debtor and am involved in all aspects of the Debtor's financial and business affairs since its inception.  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      Choa Vision, LLC, a California limited liability company, debtor and debtor-in-possession herein (the "Debtor"), owns and operates the Crowne Plaza Hartford Downtown, located at 50 Morgan Street, Hartford, Connecticut (the "Hotel").  The Debtor utilizes the Crown Plaza name subject to a certain Crowne Plaza Change of Ownership License Agreement (the "Franchise Agreement"), dated February 28, 2007.

3.      On August 18, 2010, Debtor filed for a voluntary Chapter 11 Bankruptcy ("Petition Date").  Since the Petition Date, the Debtor has continued in the possession of its Hotel and the management of its affairs.

4.      The Hotel is the only real property asset of the Debtor's estate.  The Hotel's scheduled value is $12,340,000.00.  The Hotel features 350 guest rooms and suites, over 8,000 square feet of meeting space, one restaurant, a hotel bar, an outdoor pool and a fitness center.

5.      Effective November 1, 2010, the Debtor terminated the management contract with Packard Hospitality Group, LLC, and the Debtor transitioned its records and management to a new third-party management company, Marshall Hotels and Resorts ("Marshall").

6.      The day-to-day operations of the Hotel are now managed by Marshall, pursuant to the terms of a management contract, by and between Debtor and Marshall, dated as of November

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

1    1, 2010.  On or about December of 2010, Marshall was completely integrated into the daily

2    management of the Hotel.  On January 4, 2010, Ben Zabala, a Certified Hotel Administrator,

3    took over as the general manager of the Hotel.

4

5

6    I declare under penalty of perjury that the foregoing is true and correct and that this

7    declaration is executed on February ___, 2011 at Los Angeles, California.

8

9

10    GENE W. CHOE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

### DECLARATION OF BEN ZABALA

I, Ben Zabala, declare and state as follows:

1.      I am a Certified Hotel Administrator, and the general manager of the Crowne Plaza Hartford Downtown, located at 50 Morgan Street, Hartford, Connecticut (the "Hotel"), which is owned by CHOA Vision, LLC, the debtor and debtor-in-possession herein (the "Debtor").  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      Since January 4, 2011, I took over as general manger of the Hotel, and I have been responsible for overseeing the day-to-day management of the Hotel and am involved in all aspects of the Hotel's affairs.

3.      I have had responsibility in over 50 under-performing hotels since 2004.  Since taking over the daily management of the Hotel, I have planned and implemented numerous changes at the Hotel.

4.      The following is a brief synopsis of the plans we have implemented to improve OSAT (Overall Satisfaction) scores:

5.      In the Housekeeping department, we increased the existing staff, a minimal increase in expense.  Additional staffing has reduced overtime and "tired/overworked" staff which has allowed more time to focus on details as well as overall room cleanliness and quality of work.  A 30-minute industry standard for cleaning time of the rooms has been implemented to allow the proper time to clean the room.  Rooms are being inspected more efficiently by the use of a 100-point checklist. Rooms are consistently checked for cleanliness and "guest ready" standards.  Also, the housekeeping management team is required to be on the floor inspecting rooms daily. I am also required to inspect 20 rooms per day, to ensure rooms are up to standard.

9

6.      The proper tools have been supplied to the team to ensure they are productive and have the supplies necessary.  Terry and linen par levels have been increased to handle business levels.  Repairs to the laundry equipment have resulted in increased efficiencies and better quality of product.  All play a part in giving the team the tools necessary for them to provide our guests with the proper experience.

7.      In the Maintenance department, a pro-active preventive maintenance program has been implemented.  35 rooms on each floor of the hotel are placed out of service weekly, so that the engineering team can then repair any damages in the rooms as well as perform a regimen of preventive measures. The carpet is shampooed and then the room is deep cleaned by housekeeping prior to being available for sale.  This rotation will be on a quarterly basis.  All public areas, i.e., hallways, restaurant, restrooms and lobby are also included in the preventive maintenance program.

8.      In the Front Desk department, a front desk manager has been added to the leadership team.  Along with the supervisors, this results in 21 shifts per week being covered by management – having this upper management available assists in guest interaction and staff development.  Also, each guest is contacted via email and by phone while they are in house to see if there is anything we can do to enhance their stay while they are at the hotel.

9.      In the Food and Beverage department, the lack of efficiency and food quality in the restaurant has been noted in our prior guest surveys.  In order to rectify this, we have hired a 4-Star Executive Chef.  Staffing levels were addressed and the correct coverage was implemented.  Prior to our arrival one server was alone to provide service to the breakfast guests. Currently two servers and management coverage is available in the outlets to adequately provide

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

the proper guest experience.  Menu enhancements have been implemented to correct the limited

offerings made available to the guests prior to our arrival.

10.     In January of 2011, we have increased our airline crew business from 1 airline

contract to 4 airlines resulting in 80 rooms per night for 365 days.  In order to be accepted, the

Hotel had to be inspected by the airlines, the airline union, as well as representatives of both the

flight attendants and pilots.  This encompasses cleanliness, maintenance and friendliness of the

staff.  The Hotel passed all three inspections at three different times for each airline. The Hotel

failed these inspections in prior years.

11.     Generally, ongoing training and solidification of standards has produced positive

results and will continue to develop the longer they are in place. An example is the Priority Club

(IHG Brand Loyalty Program).  In the past year, less than 20 Priority Club members have been

signed up at the hotel.  In the month of February alone, over a 100 members have been signed

up.  This builds loyalty to the brand and to the property resulting in higher revenues and

increased guest satisfaction.

12.     The Hotel is moving in a positive direction. The leadership team on the ground is

on the floors every day interacting with both guests and staff.  In just a few weeks time since I

started as the general manager, I have been able to rally the staff and turn the direction of the

hotel into a positive one.  February scores continue to be an improvement over prior months and

will continue to move forward.

13.     A notable increase in scores for both January and February confirms the success

of these efforts.  However, the complete effect of the changed management will only be seen in

the upcoming months.

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

1      I declare under penalty of perjury that the foregoing is true and correct and that this

2 declaration is executed on February 22 2011 at Hartford, Connecticut.

3

4

5                               BEN ZABALA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

**Comments of the Office of the United States Trustee**

[   ]    The U.S. Trustee takes no position.

[   ]    The U.S. Trustee has no objection.

[   ]    The U.S. Trustee objects and requests a hearing.

[   ]    An objection is raised as set forth below.

**Comments:**

                                                          **OFFICE OF THE U.S. TRUSTEE**

**Dated:** _____          _____
                                                          **Attorney for the U.S. Trustee**

**In Re: CHOA Vision, LLC**

Chapter 11

Case No: **2:10-bk-44798-RN**

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

# EXHIBIT 1

November 2010

100 Very
75 Somewhat
50 Niether
25 Somewhat
0 Very

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
|---|---|---|---|---|---|
| 1 | 50.00% | 100.00% | 0.00% | 100.00% | |
| 2 | 50.00% | 75.00% | 100.00% | 100.00% | |
| 3 | 25.00% | 75.00% | 100.00% | 75.00% | |
| 4 | 0.00% | 75.00% | 100.00% | 50.00% | |
| 5 | 0.00% | 25.00% | 100.00% | | |
| 6 | 100.00% | 100.00% | 75.00% | | |
| 7 | 75.00% | 100.00% | 75.00% | | |
| 8 | 75.00% | 100.00% | | | |
| 9 | 75.00% | 75.00% | | | |
| 10 | 75.00% | 75.00% | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| Total Number of Guestviews | 10 | 10 | 7 | 4 | 0 |
| Total Percentage of all Scores | 525.00% | 800.00% | 550.00% | 325.00% | 0.00% |
| Total Average of Scores | 52.50% | 80.00% | 78.57% | 81.25% | #DIV/0! |



| |
|---|
| 31 |
| 2200.00% |
| 70.97% |

December 2010

100 Very
75 Somewhat
50 Niether
25 Somewhat
0 Very

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
|---|---|---|---|---|---|
| 1 | 0.00% | 100.00% | 75.00% | 75.00% | 75.00% |
| 2 | 75.00% | 75.00% | 75.00% | 75.00% | 25.00% |
| 3 | | 75.00% | | 50.00% | 100.00% |
| 4 | | 25.00% | | | 75.00% |
| 5 | | 25.00% | | | |
| 6 | | 0.00% | | | |
| 7 | | 0.00% | | | |
| 8 | | 100.00% | | | |
| 9 | | 75.00% | | | |
| 10 | | 75.00% | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| Total Number of Guestviews | 2 | 10 | 2 | 3 | 4 |
| Total Percentage of all Scores | 75.00% | 550.00% | 150.00% | 200.00% | 275.00% |
| Total Average of Scores | 37.50% | 55.00% | 75.00% | 66.67% | 68.75% |



| |
|---|
| 21 |
| 1250.00% |
| 59.52% |

January 2011

100 Very
75 Somewhat
50 Niether
25 Somewhat
0 Very



| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
|---|---|---|---|---|---|
| 1 | 100.00% | 75.00% | 100.00% | 75.00% | |
| 2 | 0.00% | 25.00% | 100.00% | 75.00% | |
| 3 | 100.00% | | 75.00% | 25.00% | |
| 4 | 100.00% | | 50.00% | 25.00% | |
| 5 | | | 100.00% | 25.00% | |
| 6 | | | | 100.00% | |
| 7 | | | | 100.00% | |
| 8 | | | | 75.00% | |
| 9 | | | | 75.00% | |
| 10 | | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| Total Number of Guestviews | 4 | 2 | 5 | 9 | 0 |
| Total Percentage of all Scores | 300.00% | 100.00% | 425.00% | 575.00% | 0.00% |
| Total Average of Scores | 75.00% | 50.00% | 85.00% | 63.89% | #DIV/0! |



| |
|---|
| 20 |
| 1400.00% |
| 70.00% |

February 2011

100 Very
75 Somewhat
50 Niether
25 Somewhat
0 Very



| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
|---|---|---|---|---|---|
| 1 | 100.00% | 100.00% | 100.00% | | |
| 2 | 75.00% | 75.00% | 100.00% | | |
| 3 | 75.00% | 100.00% | 100.00% | | |
| 4 | 25.00% | 100.00% | 100.00% | | |
| 5 | 25.00% | 100.00% | 100.00% | | |
| 6 | 100.00% | 100.00% | | | |
| 7 | 100.00% | 100.00% | | | |
| 8 | 75.00% | 50.00% | | | |
| 9 | 75.00% | | | | |
| 10 | 75.00% | | | | |
| 11 | | | | | |
| 12 | | | | | |
| 13 | | | | | |
| 14 | | | | | |
| 15 | | | | | |
| 16 | | | | | |
| 17 | | | | | |
| 18 | | | | | |
| 19 | | | | | |
| Total Number of Guestviews | 10 | 8 | 5 | 0 | 0 |
| Total Percentage of all Scores | 725.00% | 725.00% | 475.00% | 0.00% | 0.00% |
| Total Average of Scores | 72.50% | 90.63% | 95.00% | #DIV/0! | #DIV/0! |



| |
|---|
| 23 |
| 1925.00% |
| 83.70% |

In re:  CHOA VISION, LLC

Debtor(s).

CHAPTER:11

CASE NUMBER: 2:10-bk-44798-RN

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.

Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9454 Wilshire Blvd., 6th floor, Beverly Hills, CA 90212-2929

A true and correct copy of the foregoing document described **"OPPOSITION TO THE MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 OF HOLIDAY HOSPITALITY FRANCHISING, INC.; DECLARATION OF GENE W. CHOE AND BEN ZABALA IN SUPPORT THEREOF"** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  February 22, 2011  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On  February 22, 2011  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  February 22, 2011  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| February 22, 2011 | Diana Kong | /s/ Diana Kong |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.
*January 2009* **F 9013-3.1**

14

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY FRANCHISING, INC.

**<u>SERVICE LIST</u>**

*Served Via Electronic Notice*

United States Trustee (LA)
725 S. Figueroa Street, Suite 2600
Los Angeles, California 90017
ustpregion16.la.ecf@usdoj.gov
russell.clementson@usdoj.gov

Michael Jay Berger
michael.berger@bankruptcypower.com
cristina.frankian@bankruptcypower.com

Philip A Gasteier
pag@lnbrb.com

Irving M Gross
img@lnbrb.com
angela@lnbrb.com

Michael J Heyman
michael.heyman@klgates.com

Diane Ilacqua
diane.ilacqua@jpmorgan.com

Leib M Lerner
leib.lerner@alston.com

David W. Meadows
david@davidwmeadowslaw.com

Joan E Pilver
joan.pilver@ct.gov

*Served Via US Mail:*

Chambers of Judge Richard Neiter
US Bankruptcy Court – Central District of CA
Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1645
Los Angeles, CA 90012

American Hotel Register Company
11754 Cabernet Drive
Fontana, CA 92337

Carter Brothers, LLC
100 Hartsfield Center Parkway
Atlanta, GA 30354

City Line Distributors
20 Industry Drive Exn
West Haven, CT 06516

15

1
2  Connecticut Light & Power
   PO Box 270
   Hartford, CT 06141

3
4  Lodgenet Interactive Corporation
   535 Fifth Avenue, 15th Fl.
   New York, NY 10017

5
6  M3 Accounting Services
   800 Jesse Jewell Parkway SW
   Gainesville, GA 30501

7
8  Metropolitan District
   555 Main Street
   PO Box 800
9  Hartford, CT 06142

10 Pullman & Comley, LLC
   90 State House Square
   Hartford, CT 06103
11

12 Spark Energy Gas, L.P.
   3010 Briarpark Drivem Suite 550
   Houston, TX 77042
13

14 Willis of Oregon, Inc.
   1 SW Columbia St., Ste 500
   Portland, OR 97258
15

16 Zep, Inc.
   1310 Seaboard Industrial Dr.
   Atlanta, GA 30318
17

18 Hess Corporation
   Attention: Legal
   One Hess Plaza
19 Woodbridge, New Jersey 07095

20 U.S. Foodservice Inc.
   9399 W. Higgins Rd., Suite 600
21 Rosemont, Illinois 60018

22 InterContinental Hotels Group
   Attention: Legal Department
23 Three Ravinia Drive, Suite 100
   Atlanta, GA 30346
24

25 Plymouth Park Tax Services
   DBA XSPAND
   115 S. Jefferson Rd. D-4
26 Whippany, NJ 07981-1029

27

28

16

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.

*Section III – Served Via Email or Facsimile*

50 MORGAN CT, LLC
3435 Wilshire Blvd., Suite 430
Los Angeles, CA 90010
*Facsimile: (213) 487-9776*

City of Hartford
550 Main Street
Hartford, CT 06103
*Facsimile: (860) 808-5383*

Commonwealth Business Bank
5055 Wilshire Boulevard, #100
Los Angeles, CA 90036
*Email: davidk@cwbbank.com*

Greater Hartford C & V Bureau
31 Pratt Street, 4th Floor
Hartford, CT 06103
*Email: mvp@hartfordcvb.org*

One Communications
PO Box 415721
Boston, MA 02241-5721
*Email: mshaw@onecommunications.com*

Packard Hospitality Group
8775 Aero Drive
Suite 335
San Diego, CA 92123
*Email: steve@packard-1.com*

Solomon Agency Corp.
29-50 Union St. 2nd floor
Suite 200
Flushing, NY 11354
*Facsimile: (718) 461-8185*

State of Connecticut
Department of Revenue Services
25 Sigourney Street, Ste 2
Hartford, CT 06106
*Facsimile: (860) 297-5916*

OPPOSITION TO THE MOTION FOR RELIEF FROM AUTOMATIC STAY OF HOLIDAY HOSPITALITY
FRANCHISING, INC.