**MICHAEL JAY BERGER (State Bar # 100291)**
**LAW OFFICES OF MICHAEL JAY BERGER**
**9454 Wilshire Blvd. 6th Floor**
**Beverly Hills, CA 90212-2929**
**Telephone:    (310) 271-6223**
**Facsimile:    (310) 271-9805**
**michael.berger@bankruptcypower.com**

**Attorney for Debtor,**
**CHOA Vision, LLC**

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | CASE NO.:  2:10-bk-44798-RN |
| CHOA Vision, LLC, | Chapter 11 |
| Debtor. | DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION |
| | **Disclosure Statement Hearing:** |
| | Date:       May 17, 2011 |
| | Time:       2:00 p.m. |
| | Courtroom: 1645 |
| | **Plan Confirmation Hearing:** |
| | Date:       TBD |
| | Time:       TBD |
| | Courtroom: 1645 |

**TO THE HONORABLE RICHARD M. NEITER, JUDGE OF THE UNITED STATES BANKRUPTCY COURT, TO THE UNITED STATES TRUSTEE AND TO ALL INTERESTED PARTIES:**

1

## I.    INTRODUCTION

On August 18, 2010 (the "Petition Date"), CHOA Vision, LLC, a California limited liability company ("Debtor"), debtor and debtor-in-possession herein, filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code ("Code").  The document you are reading is the Disclosure Statement.  It describes the Plan of Reorganization (the "Plan").  Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs.  A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed.  The disclosure statement must contain enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The hearing on confirmation of the Plan will take place in Courtroom 1645 of the United States Bankruptcy Court, located at 255 E. Temple Street, Los Angeles, California 90012, at a date and time to be set by the Court of which the Proponent will give notice.

Any interested party desiring further information should contact:

> Law Offices of Michael Jay Berger
> 9454 Wilshire Blvd., 6th Floor
> Beverly Hills, California 90212
> Attention:  Michael E. Mahurin

## II.    GENERAL DISCLAIMER AND VOTING PROCEDURE

**PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE**

2

**PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR
PARTNERS WHAT TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE
PLAN, SHOULD THE PLAN BE CONFIRMED BY THE COURT.**

**NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE
INCONSISTENT WITH ANYTHING CONTAINED HEREIN ARE AUTHORIZED
EXCEPT TO THE EXTENT, IF AT ALL, THAT THE COURT ORDERS OTHERWISE.**

The Proponent has reserved a hearing date for a hearing to determine whether the Court
will approve this Disclosure Statement and may have also reserved a hearing date to determine
whether the Court will confirm the Plan.  Please refer to the attached notice.  If, after receiving
the ballots, it appears that the Proponent has the requisite number of votes required by the Code,
the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders
who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion
shall be filed and served on the Proponent and the Office of the United States Trustee no later
than eleven days prior to the hearing date.  Failure to oppose the confirmation of the Plan may be
deemed consent to the Plan's confirmation.

**III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

Any party in interest may object to confirmation of the Plan, but as explained below not
everyone is entitled to vote to accept or reject the Plan.

3

## IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor. An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an allowed claim or interest. With the exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest.  Please refer to <u>Section VI</u> below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  <u>Exhibit "1"</u> contains a list of claims that are not scheduled as disputed, contingent, or unliquidated.

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

Impaired creditors include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the maturity of such claim as it existed before default, compensates for any damages incurred as a

result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

# V.    VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one noninsider impaired class of claims has accepted and certain statutory requirements are met as to both nonconsenting members within a consenting class and as to dissenting classes. A class of claims has accepted the Plan when more than one-half in number and at least two-thirds in amount of the allowed claims actually voting, vote in favor of the Plan. A class of interests has accepted the Plan when at least two-thirds in amount of the allowed interests of such class actually voting have accepted it. It is important to remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will not bind the parties unless and until the Court makes an independent determination that confirmation is appropriate. That is the subject of any upcoming confirmation hearing.

# VI.    INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case has not yet been set. The Debtor has filed an application with the Court to determine what the bar date for filing a proof of claim in this case will be. The Debtor has requested a bar date of May 3, 2011. After a date is ordered by the Court, the Debtor will provide notice to all known creditors of the bar date and any deadline for objecting to claims.

In this case, the Proponent believes that the following classes are impaired and therefore entitled to vote:

Class #3:              Secured claim of senior secured lender holding voluntary lien; and

Class #4:              General unsecured claims.

In this case, the Proponent believes that the following classes are unimpaired and therefore not entitled to vote:

6

Class #1:                    Secured claim of senior secured real estate taxes;

Class #2:                    Secured claim of senior secured real estate taxes; and

Class #5:                    Interest holders.

A party that disputes the Proponent's characterization of its claim or interest as unimpaired may request a finding of impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent at the following address:

> Law Offices of Michael Jay Berger
> 9454 Wilshire Blvd., 6th Floor
> Beverly Hills, California 90212
> Attention:  Michael E. Mahurin

Ballots will be due at a time to be determined by the Court of which the Proponent will later give notice.


## VII.    DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING

Debtor is a limited liability company.  Debtor is not a small business debtor, as defined in 11 U.S.C. § 101(51D).  Debtor conducts 100% of its day-to-day operations in Hartford, Connecticutt.  100% of the Debtor's corporate and financial management activities are conducted in Los Angeles, California, since the Debtor was formed in November of 2006.

What follows is a brief description of the Debtor's business, a brief summary of the dates and circumstances that led Debtor to file bankruptcy, and the Debtor's future business plans.

Debtor is the owner of the 350-room Crowne Plaza Hartford Downtown, located at 50 Morgan Street, in Hartford, Connecticut (the "Hotel").  The Hotel features 350 guest rooms and

suites, over 8,000 square feet of meeting space, one restaurant, a hotel bar, an outdoor pool and a fitness center. The Hotel currently employs approximately 96 people.

On February 28, 2007, the Debtor purchased the Hotel and gave Commonwealth Business Bank ("CBB") a promissory note (the "Note") and mortgage (the "Mortgage"), in exchange for a loan (the "Loan"), which has a current outstanding balance of approximately $12,260,272.63. The event that precipitated filing the Chapter 11 bankruptcy case was that the Debtor learned CBB's intention to sell the Note and assign the Mortgage to 50 Morgan CT, LLC ("50 Morgan"). Debtor is informed and believes that 50 Morgan has experience in the management of hotels and intends to attempt to oust the equity holders in the Debtor and take over the Hotel. The current value of the Hotel is approximately $9,200,000.00, pursuant to an appraisal dated as of September 13, 2010. The Debtor has approximately $1,725,981.15 in secured real property tax claims for property taxes due from 2007 to 2010.

The Debtor has unsecured, priority claims in the approximate amount of $320,542.66. These claims relate to sales and use taxes and personal property taxes. The Debtor has non-priority, unsecured claims in the approximate amount of $1,260,264.88.

The Debtor utilizes the Crown Plaza name under a franchise agreement with Holiday Hospitality Franchising, Inc. ("HHFI"), a member of InterContinental Hotels Group, under a Crowne Plaza Change of Ownership License Agreement, dated February 28, 2007 (the "Franchise Agreement"). On March 8, 2011, the Debtor defeated a Motion for Relief from the Automatic Stay brought by HHFI alleging that HHFI was entitled to relief because the Debtor had breached the Franchise Agreement and relief from stay was required to allow HHFI to protect its service mark by pulling the flag on the Debtor.

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

Effective November 1, 2010, the Debtor terminated the management contract with Packard Hospitality Group, LLC ("Packard"), which was the management company in place at the time of filing of the petition.  The Debtor transitioned its records and management to a new third-party management company, Marshall Hotels and Resorts ("Marshall").  The day-to-day operations of the Hotel are now managed by Marshall, pursuant to the terms of a management contract, by and between Debtor and Marshall, dated as of November 1, 2010.  In mid-December of 2010, Marshall was completely integrated into the daily management of the Hotel.  On January 4, 2010, Ben Zabala, a Certified Hotel Administrator, took over as the general manager of the Hotel.

Since filing, in addition to installing Marshall as the new management company, the Debtor has taken additional steps to increase the income at the Hotel.   Applicant filed a Motion for an Order Approving the Sale Transaction for Certain Easement Asset ("Sale Motion").  A hearing is set on the Sale Motion for April 6, 2011.

50 Morgan brought a civil suit entitled *50 Morgan CT, LLC v. Kimberly Park, et al.*, Superior Court of the State of California, County of Los Angeles, Central District, Case No. BC455045 (the "Guarantor Action"), which alleges that the Debtor is in default under the borrower loan documents and the guarantors are in default under the guaranty, all as a result of the Debtor's failure to make timely payments on the Loan.  The Guarantor Action seeks in excess of $13,000,000.00 in damages from the guarantors.  Two of the guarantors are the two managing members of the Debtor, Gene Choe and Ron Lim.  The Debtor is prosecuting an adversary proceeding wherein the Debtor is seeking to enjoin 50 Morgan from further prosecution the Guarantor Action pending confirmation of a plan in this bankruptcy.

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

The Debtor is also in the process of a tax appeal against the City of Hartford, challenging the valuation of the Hotel for *ad valorem* tax purposes, *Choa Vision, LLC v. City of Hartford*, Superior Court of Connecticut, case number CV-09-4021050S (the "State Court Action").  As reflected in the Plan, the Debtor expects a significant reduction in the amount of taxes due as a result of the State Court Action.

The Debtor anticipates that in the State Court Action, the Debtor will be able to reduce the Debtor's tax liability significantly by reducing the assessed value of the Hotel from $14,205,000.00 to $9,200,000.00.  Debtor's anticipation of success in the State Court Action is the Debtor's treatment of the secured property tax claims herein.

## VIII.   CRITICAL PLAN PROVISIONS

Listed below are the sources of money earmarked to pay creditors and interest-holders.

a.        Future earnings from continued operations of the Hotel.

Most likely, general unsecured creditors can expect payment on July 1, 2011 (the "Effective Date"), in the amount of $3,000.00, and continuing every quarter until April 1, 2016; thereafter, general unsecured creditors can expect payment on July 1, 2016 in the lump sum amount of $40,000.00.

## X.        DESCRIPTION AND TREATMENT OF CLAIMS

a.        Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts.  First, the amount of each distribution, or if only one is to be made,

then that amount; second, the total amount that will be paid.  The Proponent is usually not required by law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to, had a bankruptcy case not commenced.  The "Distribution Due Date" column states the frequency with which distributions will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Distribution" column describes the expected source of distribution.  Further details regarding the source of distribution are found in Sections X and XI.

The timing of distributions to many creditors is determined by the "Effective Date." Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of distributions to impaired creditors is measured from the Effective Date.   In this case, the Effective Date is **July 1, 2011**.

| Distribution Recipient | Payment Amount and Interval | Payment Due Date | Source of Distribution | Total Amount to be Paid |
|---|---|---|---|---|
| Law Offices of Michael Jay Berger | TBD (lump sum) | Effective Date (subject to Court approval) | Cash collateral (if available) and balance of fund from Debtor's reserve account | TBD |
| Clerk's Office Fees | TBD (lump sum) | Effective Date | Cash collateral (if available) and balance of fund from Debtor's reserve account | TBD |
| Office of the U.S. Trustee Fees | TBD (lump sum) | Effective Date | Cash collateral (if available) and balance of fund from Debtor's reserve account | TBD |
| State of Connecticut | $12,467.23 (quarterly) | 07/01/2011 – 04/01/2016 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $249,344.60 |
| City of Hartford | $4,722.92 (quarterly) | 07/01/2011 – 04/01/2016 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $94,459.40 |
| XSPAND | $46,612.02 | 07/01/2011 – | Cash collateral (if | $932,240.40 |

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

| (Class #1) | (quarterly) | 04/01/2016 | available) and balance of fund from Debtor's reserve account | |
|---|---|---|---|---|
| City of Hartford (Class #2) | $29,119.34 (quarterly) | 07/01/2011 – 04/01/2016 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $582,386.80 |
| 50 Morgan (Class #3) | $48,530.25 (monthly) | 07/01/2011 – 06/01/2014 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $1,747,089.00 |
| 50 Morgan (Class #3) | $79,228.78 (monthly) | 07/01/2014 – 06/01/2021 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $6,655,217.52 |
| 50 Morgan (Class #3) | $9,208,244.17 (lump sum) | 07/01/2021 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $9,208,244.17 |
| Unsecured creditors (Class #4) | $3,000.00 (quarterly) | 07/01/2011 – 04/01/2016 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $60,000.00 |
| Unsecured creditors (Class #4) | $40,000.00 (lump sum) | 07/01/2016 | Cash collateral (if available) and balance of fund from Debtor's reserve account | $40,000.00 |
| Interest Holders (Class #5) | None | Not applicable | Not Applicable | None |

All claims listed in <u>Exhibit "1"</u> are undisputed.  No claimant or interest holder is an affiliate of the Debtor.

    b.    <u>Unclassified Claims</u>

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has not placed the following claims in a class.  The treatment of these claims is provided below.

1.   *Administrative Expenses*

These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for distribution and after a hearing thereon. The Court must approve all professional fees listed in this chart. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be required to be paid under this Plan.

The Code requires that allowed administrative expenses be paid on the effective date unless the party holding the administrative expense agrees otherwise. The claimants have not agreed otherwise.

| Claimant | Amount Owed (exclusive of retainer deposits) | Treatment |
|---|---|---|
| Law Offices of Michael Jay Berger | TBD (subject to Court approval) | Paid in full on Effective Date |
| Clerk's Office Fees | TBD | Paid in full on Effective Date |
| Office of the United States Trustee Fees | TBD | Paid in full on Effective Date |

2.   *Priority Unsecured Tax Claims*

These include certain types of property, sales, and income taxes.

The Code requires that the holders of such claims receive regular installment payments in cash over a period ending not later than five years after the date of the order for relief, unless agreed otherwise. The claimant has not agreed otherwise. The total cash payments must have a present value equal to the amount of the allowed claim. The treatment of this claim is in a manner not less favorable than the most favored nonpriority unsecured claim provided in this Plan (other than any cash payments to an administratively convenient class). The amount of the

allowed claim includes the amount of tax owed plus interest of 3.0%.  The present value is

calculated as of the Effective Date.

| Description | Amount Owed (Allowed Claim) | Treatment |
|---|---|---|
| Name:  State of Connecticut<br>Type of Tax:  Sales/Occupancy Taxes<br>Date tax assessed:  2009-2010<br>Date(s) of order for relief: unknown | $232,474.29 | Total Amount of Cash Payments:<br>$249,344.60<br>Interest Rate:  3.0%<br>First Payment Date:  July 1, 2011<br>Amount of each payment:  $12,467.23<br>Frequency of payments:  quarterly<br>Total yearly payments:  $49,868.92<br>Final payment date:  April 1, 2016 |
| Name:  City of Hartford<br>Type of Tax:  personal property tax<br>Date tax assessed:  2008-2009<br>Date(s) of order for relief: unknown | $88,068.37 | Total Amount of Cash Payments:<br>$94,459.40<br>Interest Rate:  3.0%<br>First Payment Date:  July 1, 2011<br>Amount of each payment:  $4,722.97<br>Frequency of payments:  quarterly<br>Total yearly payments:  $18,891.88<br>Final payment date:  April 1, 2016 |
| **TOTAL UNSECURED TAX CLAIMS** | **$320,542.66** | |

      c.    <u>Classes of Secured Claims</u>

**<u>Disclosure regarding secured claims:</u>**

Each class of secured claim(s) may elect 11 U.S.C. §1111(b)(2) treatment at any time

prior to the conclusion of the hearing on the disclosure statement or within such time as the court

may fix. See Fed. R. Bankr. P. 3014.  The Court has not fixed a later time for an 11 U.S.C.

§1111(b)(2) election.

If an 11 U.S.C. §1111(b)(2) election was (or is) made as to any of the following secured

claims, then the treatment of any such claim must comply with 11 U.S.C. §1129(a)(7)(B), which

states that "each holder of a claim of such class will receive or retain under the plan on account

of such claim property of a value, as of the effective date of the plan, that is not less than the

value of such holder's interest in the estate's interest in the property that secures such claims."  11

U.S.C.A. § 1129(a)(7)(B) (West 2004); See also Fed. R. Bankr. P. 3014.

| Class# | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of senior secured real estate taxes | N | N | Payment interval:  Quarterly |
| | Name:  XSPAND | | | Quarterly payment:  $46,612.02 |
| | Collateral description:  Hotel | | | Payments begin:  July 1, 2011 |
| | Value of collateral:  $9,200,000.00 | | | Payments end:  April 1, 2016 |
| | Priority of lien: first | | | Balloon payment:  none |
| | Principal owed:  $1,110,822.42 | | | Interest Rate:  3.0%; principal and interest. |
| | Pre-petition arrearages:  $230,716.99 | | | Arrearage payment interval:  not applicable |
| | Post-Petition arrearages:  $none | | | Arrearage monthly payment:  not applicable |
| | Total Claim Amount:  $869,166.37 (calculated based upon value of $9,200,000.00; current total claim amount is $1,341,539.41; based upon current assessed value of $14,205,000.00) | | | Arrearage payments begin:  not applicable |
| | | | | Arrearage payments end:  not applicable |
| | | | | Arrearage interest rate:  not applicable |
| | | | | Arrearage balloon payment:  none |

The secured claim of the XSPAND is unimpaired and treated in the same manner as the

Debtor's unsecured, priority tax claims.

| Class# | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 2 | Secured claim of senior secured real estate taxes | N | N | Payment interval:  Quarterly |
| | Name:  City of Hartford | | | Quarterly payment:  $29,119.34 (includes payment for all taxes, interests and penalties owed to the City of Hartford, pre-petition and post-petition) |
| | Collateral description:  Debtor's Residence | | | Payments begin:  July 1, 2011 |
| | Value of collateral:  $9,200,000.00 | | | Payments end:  April 1, 2016 |

| | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| | Priority of lien: second | | | Balloon payment: none |
| | Principal owed: $768,883.48 | | | Interest Rate: 3.0%; principal and interest. |
| | Pre-petition arrearages: $69,199.51 | | | Arrearage payment interval: not applicable |
| | Post-Petition arrearages: $none | | | Arrearage monthly payment: not applicable |
| | Total Claim Amount: $542,983.34 (calculated based upon value of $9,200,000.00; current total claim amount is $838,082.99; based upon current assessed value of $14,205,000.00) | | | Arrearage payments begin: not applicable |
| | | | | Arrearage payments end: not applicable |
| | | | | Arrearage interest rate: not applicable |
| | | | | Arrearage balloon payment: none |

The secured claim of the City of Hartford is unimpaired and treated in the same manner as the Debtor's unsecured, priority tax claims. Post-petition property taxes which have come due and not been paid to the City of Hartford are treated along with pre-petition taxes owed to the City of Hartford.

| Class# | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|---|---|---|---|---|
| 3 | Secured claim of senior secured lender holding voluntary lien | N | Y | Payment interval: Monthly |
| | Name: 50 Morgan | | | Monthly payment: $48,530.25 (payments 1-36); $79,228.78 (payments 37-120) |
| | Collateral description: Hotel | | | Payments begin: July 1, 2011 |
| | Value of collateral: $9,200,000.00 | | | Payments end: June 1, 2021 |
| | Priority of lien: third | | | Balloon payment: $9,208,244.17 |
| | Principal owed: $12,260,272.63 | | | Interest Rate: 4.75%; interest only (payments 1-36), principal and interest (payments 37-120). |
| | Pre-petition arrearages: $unknown | | | Arrearage payment interval: monthly |
| | Post-Petition arrearages: $none | | | Arrearage monthly payment: unknown |

| | | | | |
|---|---|---|---|---|
| Total Claim Amount: $12,260,272.63 plus unknown amount of pre-petition arrearages | | | | Arrearage payments begin:  July 1, 2011 |
| | | | | Arrearage payments end:  July 1, 2021 |
| | | | | Arrearage interest rate: 4.75% |
| | | | | Arrearage balloon payment: unknown |

The lien of 50 Morgan on the Hotel is modified to provide for payments of interest only at 4.75% through June 1, 2014.  On July 1, 2014, payments shall be principal and interest payments at 4.75%, amortized from July 1, 2014 over 20 years, with the term of the loan modified to end on June 1, 2021, with a balloon payment on July 1, 2021.  Any pre-petition arrearages shall be added to the principal amount and re-paid under the same terms of the outstanding principal balance.  The lien of 50 Morgan is treated as fully secured.

     d.    <u>Classes of Unsecured Claims</u>

See <u>Exhibit "2"</u> for a list of claimants and amount owed each.

     1.    *Priority Unsecured Claims*

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The Debtor has no priority, unsecured creditors.

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

2.    *General Unsecured Claims*

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).

| Class# | Description | Insiders (Y/N) | Impaired (Y/N) | Treatment |
|--------|-------------|----------------|----------------|-----------|
| 4 | General Unsecured Claims | Y | Y | Payment interval:  Quarterly |
| | Estimated Amount of Claims: $1,260,264.88 | | | Payment amount:  $3,000.00 |
| | | | | Total amount paid:  $100,000.00 |
| | | | | Estimated percentage paid:  7.93% |
| | | | | Payments begin:  July 1, 2011 |
| | | | | Payments end:  April 1, 2016 |
| | | | | Interest rate:  0.0% |
| | | | | Lump sum payment:  $40,000.00 |
| | | | | Lump sum payment date:  July 1, 2016 |

e.    <u>Insider Claims</u>

This is the claim of a person as defined in 11 U.S.C.A. §101(31) (West Supp. 2006). Essentially, an insider is a person with a close relationship with the debtor, other than a creditor-debtor relationship.

| Insider Name | Description | Impaired (Y/N) | Treatment |
|--------------|-------------|----------------|-----------|
| Isaac Lee (Class #4) | Consideration:  accounting services Amount of Allowed Claim: $45,732.25 | Y | Payment interval:  Quarterly Payment amount:  $108.80 Payments begin:  July 1, 2011 Payments end:  April 1, 2016 Interest Rate:  0.0% Lump Sum Payment:  $1,450.63 Lump sum payment date:  July 1, 2016 (Treatment is identical to all other members in Class #4) |
| Ron Lim (Class #4) | Consideration:  accounting services Amount of Allowed Claim: $1,109.30 | Y | Payment interval:  Quarterly Payment amount:  $2.64 Payments begin:  July 1, 2011 Payments end:  April 1, 2016 Interest Rate:  0.0% |

18

| | | | Lump Sum Payment:  $35.19<br>Lump sum payment date:  July 1, 2016<br>(Treatment is identical to all other<br>members in Class #4) |
|---|---|---|---|
| **TOTAL INSIDER CLAIMS** | **$46,841.55** | | |

     f.    <u>Shareholders Interests</u>

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

## XI.    SOURCE OF MONEY TO PAY CLAIMS AND INTEREST-HOLDERS

The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds available to satisfy all expenses, including the scheduled creditor payments discussed above.  What follows is a statement of projected cash flow for the duration of the Plan.  The focus is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation, amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative number) reflects a use of cash.  A more detailed statement of cash flow projections for the duration of Plan payments is attached as <u>Exhibit "3"</u>.

| | Year #1 2011* | Year #2 2012 | Year #3 2013 | Year #4 2014 | Year #5 2015 | Year #6 2016 | Years #7-10 2017-2020 | Year #11 2021*** |
|---|---|---|---|---|---|---|---|---|
| **Projected Income** | | | | | | | | |
| Room Revenue | $5,638,972 | $5,920,921 | $6,157,757 | $6,404,068 | $6,596,190 | $6,794,075 | $6,794,075 | $3,397,038 |
| Other Revenue | $1,857,684 | $1,641,150 | $1,673,974 | $1,707,453 | $1,741,602 | $1,776,435 | $1,776,435 | $888,218 |
| Sale of Hotel | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $9,200,000 |
| **Gross Income** | *$7,496,656* | *$7,562,071* | *$7,831,731* | *$8,111,521* | *$8,337,792* | *$8,570,510* | *$8,570,510* | *$13,485,256* |
| Property | $5,518,753 | $5,605,399 | $5,693,423 | $5,782,845 | $5,873,690 | $5,965,979 | $5,965,979 | $2,982,990 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Operating Expenses | | | | | | | | |
| Management Fees | $131,191 | $132,336 | $137,055 | $141,952 | $145,911 | $149,984 | $149,984 | $74,992 |
| Managing Member Compensation | $0 | $0 | $0 | $30,000 | $60,000 | $60,000 | $60,000 | $30,000 |
| **Net Operating Income** | *$1,846,712* | *$1,824,336* | *$2,001,253* | *$2,156,724* | *$2,258,191* | *$2,394,547* | *$2,394,547* | *$10,397,274* |
| Property Taxes & Insurance | $825,105 | $863,492 | $880,762 | $898,377 | $916,345 | $934,672 | $934,672 | $467,336 |
| Debt Service | $801,182 | $582,363 | $582,363 | $766,554 | $950,745 | $950,745 | $950,745 | $9,683,617 |
| Secured/Priority Real Property Tax Plan Payments | $151,463 | $302,925 | $302,925 | $302,925 | $302,925 | $151,463 | $0 | $0 |
| Priority Sales/Use Tax Plan Payments | $24,934 | $49,869 | $49,869 | $49,869 | $49,869 | $24,934 | $0 | $0 |
| Priority Personal Property Tax Plan Payments | $9,446 | $18,892 | $18,892 | $18,892 | $18,892 | $9,446 | $0 | $0 |
| Yearly Plan Payments** | $21,000 | $12,000 | $12,000 | $12,000 | $12,000 | $46,000 | $0 | $0 |
| **Net Cash to Debtor** | **$13,582** | **($5,205)** | **$154,442** | **$108,107** | **$7,415** | **$277,287** | **$509,130** | **$246,321** |

\*      Year #1 figures include actual figures through February of 2011.

\*\*      Payments on administrative and general unsecured claims only.

\*\*\*      Projection is through July 1, 2021; proposed end of term of loan with 50 Morgan.

Assumptions and details surrounding the statement of projected cash flow:

1)   Budget is based on the Hotel's historical trends both as a CPOR (Cost Per Occupied Room), a RPOR (Revenue Per Occupied Room), and a Percentage cost of Revenues. Revenues were based off of historical Hotel data, STAR data, groups currently on the Hotel's books, and the stay pattern of the association/group base into Hartford, Connecticut.

2)   Successful reduction of value of Hotel to $9,200,000.00 for all *ad valorem* tax purposes;

3)   Sale of Hotel on or about July 1, 2021 at a price of $10,000,000.00, with closing costs estimated at 8.0%;

4)   All income and expenses of the Hotel projected as flat from 2016 through 2021; and

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

5) Payment of $60,000.00 per annum to insiders at the same time that 50 Morgan begins to receive principal and interest payments.  Payments may be made earlier only if net cash is available to the Debtor.

On the Effective Date, the Plan pays an amount estimated to be $110,922.00, which includes payment of all Administrative Expenses and initial plan payments to Unclassified Claims and Classes 1, 2 and 4.

## XII.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as Exhibit "4" are three types of financial documents, including balance sheets, cash flow statements and income and expense statements for the period including the most recent twelve-month calendar year and all months subsequent thereto.

## XIII.   ASSETS AND LIABILITIES OF THE ESTATE

a.    Assets

The identity and fair market value of the estate's assets are listed in Exhibit "5" so that the reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any of these assets is discussed in Section XVI.

21

b.    <u>Liabilities</u>

<u>Exhibit "6"</u> shows the allowed claims against the estate, claims whose treatment is explained in detail by <u>Section IX</u>.

c.    <u>Summary</u>

The fair market value of all assets equals $11,315,001.28.  Total liabilities equal $16,020,702.57.

## XIV.    TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable."  The term can mean that secured claimants retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that unsecured claimants whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable"

means that each holder of an interest must receive the value of such interest or else no junior

interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot

be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will

receive or retain any property under the Plan, unless the Plan provides that the class of general

unsecured claims shall be paid in full with interest.  These are complex statutory provisions and

the preceding paragraphs do not purport to state or explain all of them.

## XV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a

consenting class receive at least as much as would be available had the Debtor filed a Chapter 7

petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee.

Unsecured creditors generally share in the proceeds of sale only after secured creditors and

administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured

creditors do.  Unsecured creditors with the same priority share in proportion to the amount of

their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7

than under Chapter 11 for three reasons.  First, the estimated liquidation value of approximately

$10,579,001.20 is less than its fair market value of $11,315,001.28.  Second, in a chapter 7 case

a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no

more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and

up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable

compensation no more than 3% of moneys over $1,000,000.  Finally, a chapter 7 recovery may

be less because an individual debtor is permitted to exempt a certain amount of the sales

proceeds before unsecured creditors are paid anything.

| | **Chapter 7** | **Chapter 11** |
|---|---|---|
| Real Property (Liquidation Value) | $9,200,000.00 | Not applicable* |
| (Less Costs of Sale: Estimated at 8.0%) | ($736,000.00) | Not applicable* |
| Personal Property | $2,115,001.28 | Not applicable* |
| **Total Value of Assets** | **$10,579,001.20** | Not applicable* |
| Secured Claims | $10,579,001.20 | Not applicable* |
| Chapter 7 Trustee expenses | $340,620.00 | Not applicable* |
| Administrative Claims | $15,000.00 | Not applicable* |
| Priority Tax Claims | $320,542.66 | Not applicable* |
| Other Priority Unsecured Claims | $0.00 | Not applicable* |
| **Total Expenses** | **$11,255,163.86** | Not applicable* |
| **Liquidation Value to Chapter 7 General Unsecured Creditors / Proposed Payment to Chapter 11 General Unsecured Creditors** | **($676,162.66)** | **$100,000.00** |
| **Estimated Amount of Allowed General Unsecured Claims** | **$1,260,264.88** | **$1,260,264.88** |
| **Estimated Percentage Paid on Allowed General Unsecured Claims** | **0.00%** | **7.93%** |

*  Not applicable because Plan provides for payment from future income rather than from
proceeds from sale of assets.

## XVI.    FUTURE DEBTOR

    a.    <u>Management of Debtor</u>

        1.    Names of persons who will manage the Debtor's business affairs:  Gene

W. Choe, Esq., and Ron Lim, the Managing Members of the Debtor, will

manage the affairs of the Debtor.  On-site management will continue to be

provided by Marshall.

        2.    Proposed compensation to persons listed above:  Mr. Choe and Mr. Lim

will only receive reimbursement of expenses in connection with their services for Debtor until July 1, 2014, when principal and interest payments commence to 50 Morgan.  At that time, Mr. Choe and Mr. Lim shall be entitled to annual compensation not to exceed the aggregate of $60,000.00.  Compensation may be paid from the Effective Date, but only if there should exist a net cash surplus, plus 10% of any amount paid as compensation.  Marshall will receive compensation in the amount of 1.75% of gross income for on-site property management services.  In any year in which gross income exceeds $7,000,000.00, Marshall shall receive 2.25% of any amount in excess of $7,000,000.00, but less than $8,000,000.00.  In any year in which gross income exceeds $8,000,000.00, Marshall shall receive 2.50% of any amount in excess of $8,000,000.00.

3.    Qualifications:  Mr. Choe and Mr. Lim have been providing management and financial services to the Debtor, as well as directing the respective property management companies since the Debtor's inception in 2006. Mr. Lim is commissioned by the American Hotel & Lodging Educational Institute as a Certified Hotel Administrator.  Marshall's qualifications are summarized in a resume, attached hereto as Exhibit "7".

4.    Affiliation of persons to Debtor:  Mr. Choe and Mr. Lim are Managing Members of the Debtor.

5.    Job description:

    a.  Mr. Choe and Mr. Lim:  Managing Members

    b.  Marshall:  Property Manager

b.    Disbursing Agent

Marshall will be the disbursing agent for the estate.  Marshall shall be responsible for collecting money intended for distribution to claimants and transmitting it to them.  The disbursing agent's address and telephone number are:  Marshall Hotels & Resorts, Inc., 1315 South Division Street, Salisbury, Maryland 21804, (410) 749-8464; Attention Jared Karras, Vice President.

1.    Proposed compensation to person listed above:  None.  Compensation will be included in Marshall's compensation as property manager.

2.    Qualifications:  See management qualifications above.

3.    Affiliation of person to Debtor:  Property manager (not an affiliate of the Debtor.

4.    Job description:  Disbursing Agent.

c.    Future Financial Outlook

The Proponent believes that the Debtor's financial outlook will improve greatly under the new management in place with Marshall.

Plan payments will come from the Debtor's rental income and a small reserve fund to be established by the Debtor as excess rents are collected, as well as, if necessary, the Debtor's general partner.

The Proponent's financial solvency, which is relevant to its ability to honor its commitment to make up any shortfall, is demonstrated by the Debtor's current assets as set forth on Exhibit "5", as well as the Debtor's current liabilities as set forth on Exhibit "6".

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

# XVII.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan provides for the following:  The assumption, rejection, or assignment of the following executory contracts or unexpired leases:

| Other Party to Lease/Contract | Terms and Expiration | Accept or Reject |
|---|---|---|
| American Airlines | Business Service Contract<br>Expires November 2010 | Accept |
| AT&T Wireless | Rooftop Rental for Cell Tower<br>Expires February 2012 | Accept |
| ATM Systems Corporation | ATM Machine<br>Month-to-month | Accept |
| Bradley International Aiport | Concession License - Airport Shuttle Service<br>Expires December 11, 2011 | Accept |
| De Lage Landen | Equipment Lease (2 Copiers)<br>Expires February 2013 | Accept |
| Delta Airlines | Business Service Contract<br>Expires February 2015 | Accept |
| Dunbar Armored, Inc. | Service Agreement - Armored Car Service<br>Expires March 31, 2011 (Renewed annually) | Accept |
| Hess Corporation | Alternate Electricity Supplier<br>Expires February 2012 | Accept |
| Interspace (Clear Channel) | Service Agreement - Airport Phone Advertising<br>Expires June 2012 | Accept |
| Iron Mountain | Service Agreement - Shredding Service<br>Renewed Monthly | Accept |
| Laz Parking | Parking Management for garage<br>Month-to-month | Accept |
| Lodgenet | Service Agreement - Television Service<br>Expires April 27, 2012 | Accept |
| Paetec | Service Agreement - Telephone Service<br>Expires November 23, 2011 | Accept |
| Schindler Elevator | Service Agreement - Elevator Maintenance<br>Expires January 3, 2020 | Accept |
| Spark Energy Gas, L.P. | Alternate Natural Gas Supplier<br>Expires May 2011 | Accept |
| US Airways | Business Service Contract<br>Expires March 2013 | Accept |

The Plan does not provide for the sale or transfer of any other property of the Debtor.

The Court must make certain findings of fact before approving the aforementioned provisions as part of the Plan.  The Proponent will request that the Court make the appropriate

findings at the confirmation hearing, based upon evidence submitted in support of the

confirmation motion.

## XVIII. BANKRUPTCY PROCEEDINGS

The following orders have been entered during the pendency of the instant bankruptcy:

1.      Order Scheduling Chapter 11 Status Conference (Entered August 26, 2010);

2.      Order Granting Emergency Motion of Debtor for an Order Authorizing Payment

of Prepetition Payroll, Benefits, and Employee Expense Charges (Entered

October 5, 2010);

3.      Order Granting Emergency Motion of Debtor for an Order Authorizing Debtor to

Honor and Comply with Customer Obligations and Deposits (Entered October 5,

2010);

4.      Order Granting Emergency Motion of Debtor for an Order Authorizing Interim

Use Cash Collateral (Entered October 7, 2010);

5.      Order Granting Emergency Motion of Debtor for an Order (a) Prohibiting Utility

Providers from Altering, Refusing, or Discontinuing Service, (b) Deeming

Utilities Adequately Assured of Future Performance, and (c) Establishing

Procedures for Determining Adequate Assurance of Payment Under Section 366

of the Bankruptcy Code (Entered October 22, 2010);

6.      Order Authorizing Debtor's Continued Interim Use of Cash Collateral Through

January 5, 2011 (Entered October 26, 2010);

7.      Order on Application of Non-Resident Attorney to Appear in a Specific Case

(Entered December 16, 2010);

8.      Order Authorizing Debtor's Application to Employ General Bankruptcy Counsel (Entered January 27, 2011); and

9.      Order Authorizing Debtor's Continued Interim Use of Cash Collateral (Entered February 4, 2011).

The following motions are currently pending in the instant bankruptcy:

1.      Notice of and Motion for an Order Setting a Claims Bar Date;

2.      Notice of Motion and Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 (Personal Property) [License Agreement between Choa Vision, LLC and Holiday Hospitality Franchising, Inc. for the Crowne Plaza Hotel located at 50 Morgan Street, Hartford, Connecticut 06103];

3.      Notice of Motion and Motion for an Order: (1) Approving the Sale Transaction of Certain Rooftop Easement Asset, with the Sale to be Free and Clear of All Liens, Mortgages, and Encumbrances Pursuant to Bankruptcy Code § 363 Et Seq.; (2) Approving Wireless Communication Easement and Assignment Agreement; (3) Approving Assignment and Assumption Agreement; (4) Approving Net Profits Agreement; and (5) Granting Other Related Relief; and

4.      Debtor's Application for Order Authorizing Debtor to Employ Attorney Elliott B. Pollack as Debtor's Counsel for a Specified Special Purpose.

The following employment of the following professionals has been approved by the court:

1.      Law Offices of Michael Jay Berger as General Bankruptcy Counsel (Entered January 27, 2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## XIX.    TAX CONSEQUENCES OF PLAN

Except the positive tax benefit anticipated as a result of the pending appeal of the

Debtor's property taxes for *ad valorem* tax purposes in the State Court Action, the Debtor

anticipates no adverse tax consequences as a result of the plan.


## XX.    EFFECT OF CONFIRMATION OF PLAN

a.    General comments

The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under

the Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do

not vote to accept the Plan.

The confirmation of the Plan vests all property of the estate in the Debtor.

The automatic stay is lifted upon confirmation as to property of the estate.  However, the

stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or

the Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does

not seek a discharge, the discharge is deemed denied, and the stay as to the Debtor and the

Debtor's property terminates upon entry of the order confirming the Plan.

b.    Discharge of liability for payment of debts; status of liens; equity security holders

Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A.

1141(d)(3) (West 2004), the debtor may obtain a discharge only upon specific order of the Court.

The confirmation of the Plan does not discharge the Debtor from any debt of a kind

specified in 11 U.S.C.A. § 523(a)(2)(A)-(B) (West 2004 & Supp. 2006) that is owed to a

domestic governmental unit, or owed to a person as the result of an action filed under subchapter

III of chapter 37 of title 31 or any similar State statute, or for a tax or customs duty with respect

30

to which the debtor made a fraudulent tax return or willfully attempted in any manner to evade or

to defeat such tax or such customs duty.

c.    Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. § 1127 (West 2004 & Supp.

2006).

d.    Post-Confirmation Causes of Action

To the best knowledge of the Proponent, the estate has no causes of action.  To the extent

any cause of action may exist, Mr. Choe is designated as representative of the estate under 11

U.S.C.A. § 1123(b)(3) (West 2004) and shall have the right to assert any or all of the above

causes of action post-confirmation in accordance with applicable law.

e.    Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a party seeking any type of relief relating to a Plan provision can seek such relief in a state court of general jurisdiction.


CHOA VISION, LLC,
a California limited liability company

Dated: March _15_, 2011          By: _____
                                      Gene Choe
                                      Managing Member



LAW OFFICES OF MICHAEL JAY BERGER

Dated: March _15_, 2011          By: _____
                                      Michael Jay Berger
                                      Attorney for Debtor and Plan Proponent,
                                      CHOA Vision, LLC

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

In re: CHOA VISION, LLC

Debtor(s).

CHAPTER:11

CASE NUMBER 2:10-bk-44798-RN

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

9454 Wilshire Blvd., 6th floor, Beverly Hills, CA 90212-2929

A true and correct copy of the foregoing document described "**DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION**" will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ___March 15, 2011___ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒    Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On ___March 15, 2011___ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒    Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 15, 2011 | Jessica Orchard | /s/ Jessica Orchard |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

33

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION

# <u>SERVICE LIST</u>

### *Section I – Served Via Electronic Notice*

Office of the US Trustee (LA)
725 S. Figueroa Street, Suite 2600
Los Angeles, California 90017
ustpregion16.la.ecf@usdoj.gov
russell.clementson@usdoj.gov

Philip A Gasteier
pag@lnbrb.com
***Attorney for 50 Morgan***

Leib M Lerner
leib.lerner@alston.com

Diane Ilacqua
diane.ilacqua@jpmorgan.com

David W. Meadows
david@davidwmeadowslaw.com

Joan E Pilver
joan.pilver@ct.gov

Michael Jay Berger
michael.berger@bankruptcypower.com
cristina.frankian@bankruptcypower.com

Michael J Heyman
michael.heyman@klgates.com
***Attorney for Plymouth Park Tax Services, LLC dba Xspand***

### *Section II – Served Via US Mail*

Chambers of Judge Richard Neiter
United States Bankruptcy Court – Central District of CA
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1652
Los Angeles, California 90012

Hess Corporation
Attention: Legal
One Hess Plaza
Woodbridge, New Jersey 07095

U.S. Foodservice Inc.
9399 W. Higgins Rd., Suite 600
Rosemont, Illinois 60018

InterContinental Hotels Group
Attention: Legal Department
Three Ravinia Drive, Suite 100
Atlanta, GA 30346

34

1
2

City of Hartford
550 Main Street
Hartford, CT 06103

3
4
5

Solomon Agency Corp.
29-50 Union St. 2nd floor
Suite 200
Flushing, NY 11354

6
7

State of Connecticut
Department of Revenue Services
25 Sigourney Street
Hartford, CT 06106

8
9

Commonwealth Business Bank
5055 Wilshire Boulevard, #100
Los Angeles, CA 90036

10
11

Greater Hartford C & V Bureau
31 Pratt Street, 4th Floor
Hartford, CT 06103

12
13
14

Metropolitan District
555 Main Street
PO Box 800
Hartford, CT 06142

15
16

One Communications
PO Box 415721
Boston, MA 02241-5721

17
18

Packard Hospitality Group
8775 Aero Drive
Suite 335
San Diego, CA 92123

19

20

21

22

23

24

25

26

27

28

DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION